(No. 42392.—

LOCAL 777, DUOC, SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, Appellant, *vs.* ILLINOIS COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed June 29, 1970.*

IRVING M. FRIEDMAN, HAROLD A. KATZ, and ZENIA S. GOODMAN, all of Chicago, (KATZ & FRIEDMAN, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, (PETER A. FASSEAS and EDWARD G. FINNEGAN, Assistant Attorneys General, of counsel,) for appellee Illinois Commerce Commission.

LEE A. FREEMAN and LEE A. FREEMAN, JR., both of Chicago, for appellee Continental Air Transport Co., Inc.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Local 777, Democratic Union Organizing Committee, Seafarers International Union of North America, AFL-CIO, brought this action in the circuit court of Cook County to review an order of the Commerce Commission which granted a certificate of public convenience and necessity to Continental Air Transport Company. The circuit court affirmed the order, and the plaintiff has appealed directly to this court. 43 Ill.2d R. 302.

On July 7, 1964, Keeshin Charter Service applied to the Commerce Commission for a certificate of public convenience and necessity to operate as a motor carrier for the

transportation of passengers and their baggage between hotels in the "gold coast" area of Chicago and O'Hare International and Midway airports. On the following day Continental Air Transport Company filed an application for a certificate to provide similar but less extensive service. The Continental application noted that Continental had been granted certificates in 1957 and 1961 to operate between certain stops in Chicago and the two airports, and its application sought to supplement these existing certificates. The Commission consolidated the two applications.

On July 27, 1964, the city of Chicago filed a protest with the Commission in which it opposed Keeshin's application, and supported Continental's, on the ground that the city had executed a contract with Continental in 1959 which granted to Continental the exclusive right to operate its buses and limousines at O'Hare International and Midway airports for ten years. Thereafter, on August 1, 1964, Keeshin withdrew its application, stating that it would be difficult for Keeshin to provide the required service in view of the position of the city of Chicago that Continental had the exclusive right to operate within the airports.

The Greater North Michigan Avenue Association was allowed to intervene in support of Continental's application, and the Association of Taxicab Drivers was granted leave to intervene in opposition to it. Evidence was heard, and on August 17, 1964, the Commission entered an order granting a temporary certificate of public convenience and necessity to Continental for a trial period. The case was set for further hearing in February, 1965, to determine whether the certificate should become permanent.

The February hearing was postponed until April 27, 1965, at which time Continental presented evidence to justify making the temporary certificate a permanent one. At that hearing the plaintiff, Local 777, DUOC, sought and was granted leave to intervene. The plaintiff opposed the issuance of a permanent certificate to Continental on the

ground that it would create a monopoly in violation of the Antitrust Act of 1965. (Ill. Rev. Stat. 1969, ch. 38, pars. 60—1 through 60—11.) It contended that Continental was controlled by the same conglomerate corporation which controlled over two-thirds of the taxicabs operating in the city of Chicago, and that to allow Continental to provide bus service between the "gold coast" area and the airports would further consolidate control of the means of airport transportation in the hands of one company. To support this contention the plaintiff requested that the Commission issue subpoenas for the attendance of witnesses and production of documents relating to Parmelee Transportation Company, Checker Taxi Company, Yellow Cab Company, and Continental Air Transport Company. The request was denied by the Commission. At the close of the evidence the plaintiff requested that the examiner prepare a report. This request was also denied, and the case was taken under advisement.

On April 2, 1966, before the Commission had rendered a decision, Continental filed a supplemental petition requesting that service authorized by the temporary certificate be supplemented by routes over certain additional streets. On May 19, 1966, the plaintiff again filed an application for subpoenas for attendance of witnesses and documents, which was again denied. Evidence was taken on Continental's supplemental petition, and the plaintiff then filed a motion requesting: "(1) That the Commission direct the Examiner to prepare a report containing a proposed order, as provided by Rule XV of the Rules of Practice of the Commission. (2) That the Commission rule upon this case. (3) That leave be granted Intervenor in accordance with the Rules of Practice to file proposed findings of fact and conclusions of law at such time as the Commission directs the Examiner to prepare his report. (4) That the Commission grant the opportunity for oral argument to Intervenor DUOC LOCAL 777 as provided by Rule XVI of the

Rules of Practice." The examiner denied the motion for a report but, in lieu thereof, granted each of the parties the opportunity to file a suggested order, which they did.

On October 26, 1966, the Commission entered an order granting a permanent certificate of convenience and necessity to Continental for the original and supplemental "gold coast" routes. Petitions for rehearing were denied by the Commission. The plaintiff then filed an appeal in the circuit court of Cook County and is here on appeal from that court's affirmance of the Commission.

The plaintiff challenges the grant of the certificate on three grounds. First, it contends that the Commission lacked jurisdiction to grant the certificate. Second, it argues that the Commission deprived it of due process of law by denying its request for subpoenas and for an examiner's report. Finally, it contends that the order of the Commission should have been vacated because it sanctions a violation of the Illinois Antitrust Act.

The plaintiff's first contention, that the Commission lacks jurisdiction, is based upon a contract which Continental entered into with the city of Chicago in 1959, and which the plaintiff contends provides for the operation of a transportation system by Continental between downtown Chicago and O'Hare International and Midway airports. It is the plaintiff's position that this contract was entered into pursuant to section 11—122.1—1 of the Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 11—122.1—1), which grants to municipalities the "power to contract for the operation of a privately owned, local passenger transportation system * * *." And because section 10.3 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111⅔, par. 10.3) exempts from the definition of public utility "such public utilities which are engaged in the transportation of persons by motor bus to the extent that such transportation is conducted pursuant to a valid and subsisting contract with a political subdivision or a municipal corporation in this

State * * *", the plaintiff argues that the Commission lacked jurisdiction.

Continental contends, on the other hand, that the contract in question was entered into pursuant to sections 11—102—1 through —6 of the Municipal Code (Ill. Rev. Stat. 1969, ch. 24, pars. 11—102—1 through 11—102—6) which grant to municipalities with a population of 500,000 or more the power to establish and operate any public airport, or related buildings, structures and facilities, and to collect compensation for their use. Section 11—102—5(3) (Ill. Rev. Stat. 1969, ch. 24, par. 11—102—5(3)) specifically empowers the municipality "to * * * grant concessions or privileges in, any land adjoining the landing field or any building or structure on such land * * * for receiving and discharging passengers * * *." It is Continental's position that the contract was not to provide for transportation between the city and airports, but rather to grant Continental authority to operate on the grounds of the airport, which Continental could not have done without the permission of the city. We think this interpretation of the contract is correct.

The original contract between Continental and the city of Chicago was signed in 1959. Section 11—122.1—1 of the Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 11—122.1—1), which enables municipalities to contract for a local transportation system, was first enacted by the legislature in 1963 as section 23—116 of the Revised Cities and Villages Act. (Laws of 1963, p. 2162; re-enacted, Laws of 1965, p. 2850.) Section 10.3 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111⅔, par. 10.3) was amended at the same time to exempt such systems from the jurisdiction of the Commission. (Laws of 1963, p. 2191.) The municipality would have had no power in 1959, therefore, to contract for a local transportation system.

Moreover, the contract in question makes no attempt to regulate the rates to be charged by Continental as a common carrier. It is concerned primarily with the facilities to

be afforded to Continental within the city-owned airports and with the revenue to be derived by the city for the exclusive privilege which it granted to Continental to operate there. The contract clearly contemplated that Continental should remain subject to the jurisdiction of the Illinois Commerce Commission, for it gave the city the right to terminate in the event of "(g) The suspension or revocation of the Certificates of Convenience and Necessity issued by the Illinois Commerce Commission."

We hold, therefore, that the Commission did not lack jurisdiction.

The plaintiff next contends that the Commission's Rules of Practice required the Commission to grant its requests for subpoenas and an examiner's report. The plaintiff argues that an administrative agency is bound by its own rules of practice, and that the denial of its requests deprived it of due process of law.

Rule XV of the Rules of Practice of the Commission provides: "(a) At the close of the hearing, any party may request of record that the Examiner prepare a report containing a proposed order recommended for entry by the Commission. * * * If the Commission approves the request, it shall be the duty of such party * * * to file suggested findings of fact and conclusions of law * * * (c) After suggested findings and conclusions have been filed, the Examiner shall prepare a report * * *." The plaintiff concentrates on subsection (c) and argues that the issuance of an examiner's report is mandatory after suggested findings and conclusions have been filed by the parties, which was done in this case. In concentrating on subsection (c), however, the plaintiff overlooks its connection with subsection (a) which provides that suggested findings and conclusions are to be filed only if the Commission has granted the request for an examiner's report. It is not the filing of suggested findings and conclusions which triggers the right to an examiner's report; rather the Commis-

sion's decision to grant the request for an examiner's report under subsection (a) creates the right to file suggested findings and conclusions. And there is no indication in the record that the Commission granted the plaintiff's request for an examiner's report. The examiner's gratuitous grant of permission to the parties to file suggested findings and conclusions did not bind him to file a report.

The plaintiff's contention that its requests for subpoenas were improperly denied is intertwined with its final argument that the Commission's grant of a certificate of public convenience and necessity to Continental sanctioned a violation of the Antitrust Act. (Ill. Rev. Stat. 1969, ch. 38, pars. 60—1 *et seq.*) Rule XII(a) of the Rules of Practice of the Commission provides: "Subpoenas for the attendance of witnesses * * * or for the production of * * * documents at a hearing * * * will be issued by the Commission or Examiner upon application in writing incorporating a showing that any such subpoena is reasonably required." Since the subpoenas were directed toward proof of the plaintiff's antitrust contentions, if the Commission properly refused to consider this argument the subpoenas were not "reasonably required", and the plaintiff's requests were properly denied.

Continental argues that the Commission properly refused to consider the plaintiff's antitrust contentions since section 5(3) of the Antitrust Act (Ill. Rev. Stat. 1969, ch. 38, par. 60—5(3)) exempts from the coverage of the Act "the activities of any public utility as defined in Section 10.3 of the Public Utilities Act to the extent that such activities are subject to the jurisdiction of the Illinois Commerce Commission * * * ." The plaintiff does not dispute the existence of this exemption but argues that it does not apply to "the situation where an otherwise exempt public utility is intimately and inextricably combined with a non-exempt corporate enterprise." We agree with Continental that the exemption in the Antitrust Act is applicable.

The Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111⅔, pars. 1 *et seq.*), under which the Commerce Commission regulates all public utilities, was enacted to assure the provision of efficient and adequate utility service to the public at a reasonable cost. Because unrestrained competition prior to adoption of the Act had often resulted in the financial failure of many utilities, the Act adopted a policy of regulated monopoly to assure that utilities would be able to earn a reasonable rate of return on their investment and thus would be able to provide the required service. See *Illinois Power and Light Corp.* v. *Commerce Com.* (1926), 320 Ill. 427; Sharon, The Illinois Commerce Commission, 1949 Ill. L.F. 192, 194-95.

In our opinion the General Assembly, by exempting from the Antitrust Act those activities of any public utility which are subject to the jurisdiction of the Commerce Commission, reaffirmed the policy expressed in the Public Utilities Act that strict supervision and regulation, particularly with respect to rates charged and services provided, make an effective safeguard against the evils of monopoly at which antitrust laws are traditionally directed. We think this exemption, therefore, embraces any activity subject to the jurisdiction of the Commission, and that such activity is not subject to antitrust attack, either by itself or in conjunction with other circumstances to which the plaintiff here points.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*