COMMONWEALTH EDISON COMPANY, Petitioner, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents (AES NewEnergy, Inc., *et al.*, Intervenors).

Second District   No. 2—01—0635

Opinion filed April 4, 2002.

Michael S. Pabian, of Exelon Business Services Co., and Paul F. Hanzlik, E. Glenn Rippie, John P. Ratnaswamy, and Cynthia A. Fonner, all of Foley & Lardner, both of Chicago, for petitioner.

John P. Kelliher, Assistant Attorney General, of Chicago, for respondent Illinois Commerce Commission.

Robert P. Jared, of MidAmerican Energy Co., of Davenport, Iowa, for respondent MidAmerican Energy Company.

Owen E. MacBride, of Schiff, Hardin & Waite, of Chicago, for respondent Illinois Power Company.

Christopher J. Townsend, David I. Fein, and Terence M. Dunleavy, all of Piper, Marbury, Rudnick & Wolfe, of Chicago, for intervenor AES New Energy, Inc.

JUSTICE GEIGER delivered the opinion of the court:

The petitioner, Commonwealth Edison Company (ComEd), appeals directly to this court from an order of the respondent, Illinois Commerce Commission (the Commission). The Commission's order provided that alternative retail electric suppliers which utilize the single billing option provided under section 16—118(b) of the Public Utilities Act (the Act) (220 ILCS 5/16—118(b) (West 2000)) are not required to bill their electric customers for past-due amounts that the customers may owe ComEd for previously supplied "bundled" service. The order also provided that alternative retail electric suppliers do not have to apply payments that they receive from their customers to past-due amounts that the customers may owe ComEd for previously

supplied "bundled" service. On appeal, ComEd argues that the Commission's order misinterprets the statutory requirements of section 16—118(b) of the Act. We affirm.

This appeal arises under Article XVI of the Act, titled the Electric Service Customer Choice and Rate Relief Law of 1997 (220 ILCS 5/16—101 *et seq.* (West 2000)). The purpose of this article was to introduce competition into the Illinois electricity market. 220 ILCS 5/16—101A(b) (West 2000). A brief background discussion of Article XVI is important to understand the issues presented in the instant appeal.

Under the traditional model of the retail electricity market, a retail customer purchases several different services from its local electric utility as a single "bundled" service. Bundled service includes the electricity itself, as well as all services related to the distribution and delivery of the electricity. However, under the new Article XVI, an eligible retail customer may choose either to continue purchasing bundled service from its local electric utility or to purchase electricity as a separate "unbundled" service from three new types of suppliers. Unbundled service is available for purchase from (1) alternative retail electric suppliers, which are nonutilities licensed to sell retail electricity; (2) an Illinois electric utility other than the customer's local utility; or (3) the customer's local electric utility. Any supplier other than the customer's local electric utility is known as a "retail electric supplier" (RES). However, even if a retail customer chooses to purchase its electricity on an unbundled basis from an RES, the local electric utility continues to supply that customer's delivery service.

Article XVI also permits an RES to elect to issue a single bill to its electric customers that combines the charges for the RES's electricity and the local electric utility's delivery charges. 220 ILCS 5/16—118(b) (West 2000). This billing procedure is known as the "single billing option" (SBO). Section 16—118(b) of the Act outlines the operation of the SBO as follows:

> "An electric utility shall file a tariff pursuant to Article IX of the Act that would allow [RESs] to issue single bills to the retail customers for both the services provided by such [RES] and the delivery services provided by the electric utility to such customers. The tariff filed pursuant to this subsection shall (i) require partial payments made by retail customers to be credited first to the electric utility's tariffed services, (ii) impose commercially reasonable terms with respect to credit and collection, including requests for deposits, (iii) retain the electric utility's right to disconnect the retail customers, if it does not receive payment for its tariffed services, in the same manner that it would be permitted to if it had

billed for the services itself, and (iv) require the [RES] that elects the billing option provided by this tariff to include on each bill to retail customers an identification of the electric utility providing the delivery services and a listing of the charges applicable to such services." 220 ILCS 5/16—118(b) (West 2000).

Pursuant to this statutory requirement, ComEd filed a delivery services tariff with the Commission, detailing its intended charges for the delivery of electricity supplied by RESs. After some modification and litigation, these tariffs were approved by the Commission.

On July 11, 2000, the Commission initiated the instant proceeding against ComEd and other electric utilities. The purpose of the proceeding was to investigate whether the delivery services tariffs were unjust, unreasonable, discriminatory, or preferential due to a lack of conformity. Numerous interested parties representing the electric industry and the public interest intervened in the proceeding. Hearings were held in the Commission's Springfield office on December 12, 13, and 14, 2000, at which time the witnesses were available for cross-examination.

At the hearing, as relevant for purposes of this appeal, ComEd argued that the SBO required RESs to bill for past-due amounts that a customer may owe ComEd for bundled services provided by ComEd prior to the time that the RES became the electrical supplier for the customer. ComEd argued that these past-due amounts should be included in the single bill along with ComEd's current charges for the delivery cost of the RES's electricity. ComEd also argued that, in instances where the customer makes only a partial payment of the amount due under the single bill, this payment should be applied first to the past-due amount that the customer owed ComEd for previously provided bundled service.

Several of the intervening RESs and the Attorney General argued that this was a misinterpretation of section 16—118(b) of the Act. These parties argued that there was no statutory requirement that RESs bill their customers for past-due amounts owed to ComEd for services provided prior to the time that the RES began providing electrical service to the customer. Rather, these parties asserted that the SBO option only required the inclusion of two types of charges, (1) the cost of the electricity provided by the RES, and (2) the cost of the delivery service provided by the electric utility. These parties argued that it was ComEd's responsibility and right to collect money owed to it by its former bundled customers and that ComEd should directly bill these customers for past-due amounts.

On March 21, 2001, having considered all of the evidence, the Commission entered its order in the case. The Commission concluded

that the SBO did not require RESs to bill for past-due amounts that their customers may still owe ComEd or other electric utilities for previously supplied bundled services. The Commission interpreted section 16—118(b) of the Act as requiring the RES to bill only for the RES's electric service and the electric utility's delivery charges. The Commission found that electric utilities were entitled to collect past-due balances from their prior bundled customers and that there was no need to inject RESs into the process.

As to the issue of the application of partial payments, the Commission found that RESs should apply such payments only to charges associated with delivery service balances and not to an older balance still owed to the electric utility for bundled service. The Commission explained:

> "The directive in Section 16—118(b)(i) that partial payments made by retail customers are to be credited first to the electric utility's tariffed services means that when there are not sufficient funds to cover both the delivery service charge and the supplier charge then the [RES] must remit the delivery service charge to the utility."

ComEd filed an application for rehearing of the Commission's order, which was denied by the Commission on May 9, 2001. On June 14, 2001, ComEd filed a petition for review with this court.

On appeal, ComEd argues that the Commission's order erroneously interprets the SBO provisions of section 16—118(b) of the Act. ComEd asserts that the plain language of section 16—118(b) requires that an RES electing the SBO must bill its customers for all past-due amounts owed to ComEd for bundled services. ComEd further asserts that all partial payments received by an RES must be first applied to satisfy ComEd's outstanding charges for bundled services. ComEd concludes that such an interpretation best effectuates the purpose of Article XVI and will lead to the least customer inconvenience.

■ Under the provisions of the Act, the Commission's orders are held to be *prima facie* reasonable, and appellants bear the burden of overcoming this presumption of reasonableness. 220 ILCS 5/10—201(d) (West 2000). Illinois courts give great deference to the Commission's decisions, as they are the judgments of an administrative body with tremendous expertise in the field of public utilities and with the qualifications to interpret specialized and highly technical evidence. *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 12 (1994). When reviewing the Commission's orders, this court is limited to considering whether (1) the Commission acted within its authority; (2) adequate findings were made to support the decision; (3) the decision was supported by substantial evidence; and (4) state or federal constitutional rights were infringed. *Commonwealth Edison Co. v. Il-*

*linois Commerce Comm'n*, 322 Ill. App. 3d 846, 849 (2001). Where the issue on appeal involves the Commission's interpretation and application of the provisions of the Act, reviewing courts must give substantial weight to the Commission's interpretation. *MCI Telecommunications Corp. v. Illinois Commerce Comm'n*, 168 Ill. App. 3d 1008, 1012 (1988). However, the Commission's interpretation of a question of law is not binding on the reviewing court. *Archer-Daniels-Midland Co. v. Illinois Commerce Comm'n*, 184 Ill. 2d 391, 397 (1998).

■ When considering the interpretation to be given a statute, a court's primary objective is to ascertain and give effect to the intent of the legislature according to the plain and ordinary meaning of the statutory language. *MCI Telecommunications*, 168 Ill. App. 3d at 1012. Terms must be considered in their overall context with a view to the reason and necessity for the statute and the purpose to be achieved thereby. *MCI Telecommunications*, 168 Ill. App. 3d at 1012.

■ We therefore turn to a consideration of the language of section 16—118(b) of the Act. As detailed above, the statute requires electric utilities, such as ComEd, to file a tariff that "would allow [RESs] to issue single bills to the retail customers for both the services provided by such [an RES] and the *delivery services* provided by the electric utility to such customers." (Emphasis added.) 220 ILCS 5/16—118(b) (West 2000). We believe that this statutory language is plain on it face and requires the RES to issue a single bill for only two types of services, (1) "services" provided by the RES, and (2) "delivery services" provided by the electric utility. Therefore, under the SBO, the only service provided by the electric utility for which the RES is required to bill is the delivery service charged by the electric utility to transport electricity from the RES to the retail customer. The Act contains no language that requires an RES to bill and collect amounts that are past due and owing to the utility for charges incurred prior to the time that the RES began supplying electricity to the customer. We therefore agree with the Commission that section 16—118(b) does not require an RES to bill its customers for past-due amounts owed to the electric utility for bundled service.

Additionally, we believe that the Commission's interpretation harmonizes with the entire statutory scheme and best achieves the purpose underlying the statute. As a result of deregulation, retail electric customers may be required to rely on multiple companies for the supply and delivery of their electricity. In order to simplify the process for retail customers, the legislature has provided a mechanism through which the customer will receive only one bill for the services provided by the various electric companies that supply and deliver their service. In order to facilitate this single billing process, section

16—118(b) requires electric utilities, such as ComEd, to file tariffs with the Commission for their various delivery services. 220 ILCS 5/16—118(b) (West 2000). Based on this tariff, RESs will be able to determine the electric utility's charges for the delivery of the energy supplied by the RES and to include these charges on their monthly bill for electrical service.

On the other hand, we do not understand how requiring an RES to bill for past-due amounts owed for bundled service would foster or accomplish the purposes of Article XVI of the Act. RESs did not provide these prior services and have no knowledge of these past charges and the circumstances surrounding their nonpayment. Requiring RESs to bill for these amounts would essentially place them in the role of an unpaid bill collector for ComEd and other utilities. We believe that such an arrangement would be unfair and burdensome to RESs, as well as confusing to retail customers.

Indeed, the Commission received testimony from various RES witnesses who expressed concerns about billing for past-due services. These witnesses noted that, in the event that an RES did bill for these amounts, many customers would likely contact the RES's customer service department with questions or complaints about the charges. However, RES staff would be unable to resolve such concerns, as the RES did not generate the charges and has no authority to take any action on such charges. These witnesses expressed concern that such a billing requirement would create customer confusion and would interfere with the RES's customer relationships. There was also a concern that such a billing requirement would increase RES costs. Such evidence rebuts ComEd's assertions that RES billing for past-due amounts will facilitate Article XVI's objective of developing a competitive electricity market that operates both efficiently and equitably. See 220 ILCS 5/16—101A(d) (West 2000).

■ ComEd argues that if it is required to issue bills to collect its past-due accounts, the convenience promised by the SBO will be defeated. We disagree. As explained above, the SBO option contemplated by section 16—118(b) allows for the recovery of both RES services and delivery charges in a single bill. As already noted, we believe that the purpose of this provision is to simplify and facilitate the RES-customer relationship. In essence, the SBO permits an RES to send a single bill to its customers just as ComEd sends to its bundled customers. Therefore, section 16—118(b) levels the competitive playing field by permitting both RESs and electric utilities to issue single bills. Based on the plain language of the statute, we see no evidence that the SBO was intended as a mechanism through which electric companies could utilize RESs to collect their past-due accounts. Ac-

cordingly, for all the reasons detailed above, we conclude that the Commission correctly determined that section 16—118(b) does not require RESs to bill for past-due amounts owed to electric utilities for prior bundled service, and we affirm its findings in this regard.

■ We next turn to a consideration of the manner in which partial payments are to be credited by RESs. Section 16—118(b)(i) provides that "partial payments made by retail customers [must] be credited first to the electric utility's tariffed services." 220 ILCS 5/16—118(b)(i) (West 2000). ComEd argues that this statutory language requires that any partial payment received from a customer must be first used to credit past-due amounts for bundled service owed to the electrical utility and that any remaining amount may then be applied towards the supply and delivery charges. As noted above, the Commission rejected this argument, instead finding that partial payments received by RESs should be applied only to charges associated with delivery service balances and should not be applied to an older balance still owed to an electric utility for bundled service.

In interpreting the meaning of section 16—118(b)(i), we again turn to the language of the statute. The language provides that partial payments received by the RES should be credited first towards the electric utility's "tariffed service." 220 ILCS 5/16—118(b)(i) (West 2000). The term "tariffed service" is defined by the Act as "services provided to retail customers by an electric utility as defined by its rates on file with the Commission pursuant to the provisions of Article IX of this Act, but shall not include competitive services." 220 ILCS 5/16—102 (West 2000). ComEd argues that, since the bundled service it had previously provided to its customers was charged in accordance with the rates on file pursuant to Article IX, such service falls within the definition of a tariffed service under the Act. Accordingly, ComEd concludes that any partial payments received by an RES must be first credited to past-due amounts owing for these bundled services.

Although we do not dispute that bundled service may fall within the definition of a "tariffed service" under the Act, we nonetheless believe that the legislature's use of the term "tariffed service" in subsection (b)(i) must be read in context with the remainder of section 16—118(b). In construing statutes, courts must examine the entire statute as a whole and consider the objective and purpose of the statute. *McNames v. Rockford Park District*, 185 Ill. App. 3d 291, 295 (1989). As discussed above, the first sentence of section 16—118(b) requires an RES to bill its customers for only the *delivery service* provided by the electric utility. As the statute only requires an RES to bill for the electric utility's delivery service, it would be inconsistent to require RESs to credit partial payments towards other outstanding

charges owed to the electric utility for previously provided bundled service, and we do not believe the legislature intended such a result. Rather, we believe that the use of the general term "tariffed service" in subsection (b)(i) must be read in conjunction with and limited by the use of the specific term "delivery service" at the beginning of section 16—118(b). See *Antunes v. Sookhakitch*, 181 Ill. App. 3d 621, 628 (1989), *aff'd*, 146 Ill. 2d 477 (1992) (specific statutory provisions control over general statutory provisions). We believe that, when read in its entirety, the statute simply requires that, when a customer remits a payment that is insufficient to cover both the electric utility's delivery charge and the RES's energy charge, then the RES must credit the payment to the electric utility's charge. Accordingly, we conclude that the term "tariffed services" as used in section 16—118(b)(i) refers only to the delivery services provided by the electric utility to the customer.

Moreover, we note that ComEd's proposed interpretation would lead to unnecessary customer confusion. Indeed, we can envision the confusion resulting to customers who fully remit the balance due on an RES's bill only to find out later that the payment was applied to an outstanding bundled service balance assessed by the electric utility. The practical effect of this practice would be the exact same as if the RES actually billed for the past-due balance. This would lead to a strain on the RES-customer relationship and would be contrary to the purpose of Article XVI of the Act.

Finally, we note that the Commission's interpretation of a statute is entitled to substantial deference when there is a reasonable debate as to its meaning. *Commonwealth Edison*, 322 Ill. App. 3d at 854. After reviewing the statutory language and considering the evidence presented at the hearing, we see no reason to disturb the Commission's interpretation of section 16—118(b)(i). Rather, we agree with the Commission that section 16—118(b)(i) does not require an RES to credit partial payments received from customers to a past-due balance for bundled service owed to an electrical utility. Therefore, we affirm the Commission's findings as to the crediting of partial payments.

For the foregoing reasons, the order of the Commission is affirmed.

Affirmed.

HUTCHINSON, P.J., and GROMETER, J., concur.