# Illinois Official Reports

## Supreme Court

---

### *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526

---

| | |
|---|---|
| Caption in Supreme Court: | PEGGY ZAHN, Appellant, v. NORTH AMERICAN POWER & GAS, LLC, Appellee (The People of the State of Illinois *ex rel.* Lisa Madigan, Attorney General of Illinois, Intervenor-Appellant). |
| Docket No. | 120526 |
| Filed | December 1, 2016 |
| Rehearing denied | January 23, 2017 |
| Decision Under Review | Certified question from the United States Court of Appeals for the Seventh Circuit; heard in that court on appeal from the United States District Court for the Northern District of Illinois, the Hon. Michael S. Kanne, the Hon. Diane S. Sykes, and the Hon. J. Phil Gilbert, Judges, presiding. |
| Judgment | Certified question answered. |
| Counsel on Appeal | Douglas Gregory Blankinship, of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, of White Plains, New York, for appellant. <br><br> Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro and David L. Franklin, Solicitors General, and Brett E. Legner, Deputy Solicitor General, of Chicago, of counsel), for the People. |

Angelo J. Kappas and Stephanie F. Jones, of Gordon & Rees Scully Mansukhani LLP, of Chicago, for appellee.

Thomas R. Stanton, Special Assistant Attorney General, of Chicago, for *amicus curiae* Illinois Commerce Commission.

Michael R. Strong, of Strong Legal & Regulatory Solutions, LLC, of Chicago, and Joshua M. Feagans, of Griffin Williams LLP, of Geneva, for *amicus curiae* Illinois Competitive Energy Association.

| Justices | CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion. |
| | Justices Freeman, Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1    The United States Court of Appeals for the Seventh Circuit has certified for instruction from this court the following question of Illinois law: Does the Illinois Commerce Commission have exclusive jurisdiction over a reparation claim, as defined in *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, brought by a residential consumer against an alternative retail electric supplier, as defined by section 16-102 of the Electric Service Customer Choice and Rate Relief Law of 1997 (220 ILCS 5/16-102 (West 2014))? *Zahn v. North American Power & Gas, LLC*, 815 F.3d 1082, 1095 (7th Cir. 2016). We accepted the Seventh Circuit's invitation to consider this question pursuant to Illinois Supreme Court Rule 20 (eff. Aug. 1, 1992).[1] For the reasons that follow, we answer the question in the negative. Under Illinois law, the Illinois Commerce Commission does not have exclusive original jurisdiction over such claims. The claims may be pursued through the courts.

¶ 2                                  BACKGROUND

¶ 3    We take the facts as the Seventh Circuit has stated them in its certification ruling. They are simple and straightforward. Peggy Zahn is a residential consumer of electric power. North American Power & Gas, LLC (NAPG), is an alternative retail electric supplier (ARES) within the meaning of section 16-102 of the Electric Service Customer Choice and Rate Relief Law of

---

[1]In the proceedings before our court, the Illinois Commerce Commission sought and was granted leave to file a friend of the court brief pursuant to Illinois Supreme Court Rule 345 (eff. Sept. 20, 2010) in support of Peggy Zahn, plaintiff in the federal action. The Illinois Competitive Energy Association, in turn, requested permission to file a friend of the court brief supporting North American Power & Gas, LLC, the defendant in the federal action. Its request was also allowed. In addition, we allowed the State of Illinois to intervene. As with the Commerce Commission, the State supports Zahn's position.

1997 (Rate Relief Law) (220 ILCS 5/16-102 (West 2014)), which is part of the Public Utilities Act (Act) (220 ILCS 5/1-101 (West 2014)).

¶ 4　　As defined by section 16-102, an ARES is any "person, cooperative, corporation, municipal corporation, company, association, joint stock company or association, firm, partnership, individual, or other entity, their lessees, trustees, or receivers appointed by any court whatsoever, that offers electric power or energy for sale, lease or in exchange for other value received to one or more retail customers, or that engages in the delivery or furnishing of electric power or energy to such retail customers, and shall include, without limitation, resellers, aggregators and power marketers," subject to various exceptions. 220 ILCS 5/16-102 (West 2014). ARESs were authorized by the General Assembly when it enacted the Rate Relief Law as part of an effort to partially deregulate our state's electricity market and make it more competitive. Under this new system, consumers are no longer confined to purchasing their power from their local public utility. Rather, they have the option of buying their power from the local public utility, an electric utility other than their local public utility, or an ARES. *Zahn*, 815 F.3d at 1084-85.

¶ 5　　In August 2012, Zahn decided to purchase her electricity from NAPG based on its promise of lower rates. NAPG sent Zahn a letter stating that she would receive its "New Customer Rate" of $0.0499 per kilowatt-hour during her first month of service and a "market based variable rate" thereafter. The company also sent her its "Electricity Sales Agreement Customer Disclosure Statement." The statement indicated that the term of the agreement was month-to-month and that "[o]ther than fixed and/or introductory/promotional rates, all rates shall be calculated in response to market pricing, transportation, profit and other market price factors." It also disclosed, under the heading "Open Price," that its prices were "variable" based on "market prices for commodity, transportation, balancing fees, storage charges, [NAPG] fees, profit, [and] line losses ***. Your price may be higher or lower than your [local public utility] ***."

¶ 6　　Zahn never received the $0.0499 per kilowatt-hour "New Customer Rate" she was promised. During her first two months of service, September and October 2012, NAPG charged her $0.0599 per kilowatt-hour. Thereafter, from November 2012 through June 2014, the rate it charged her was always higher than what she would have been required to pay her local public utility, Commonwealth Edison (ComEd), had she not switched to NAPG. At times, NAPG's rate was nearly triple ComEd's.

¶ 7　　Zahn objected to NAPG's higher charges and filed a class action against the company in the United States District Court for the Northern District of Illinois. Zahn's complaint invoked the court's diversity jurisdiction (28 U.S.C. § 1332 (2012)) and sought damages based on violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2014)), common-law breach of contract, and unjust enrichment. NAPG moved to dismiss Zahn's complaint for lack of subject-matter jurisdiction and failure to state a claim. The district court granted that motion. Zahn then appealed to the United States Court of Appeals for the Seventh Circuit. It is in that appeal that the question before us was certified.

¶ 8　　In assessing whether the district court erred in dismissing Zahn's complaint, the Seventh Circuit has concluded that the dispositive threshold issue is whether an Illinois state court would have had subject-matter jurisdiction to hear plaintiff's claims or whether exclusive jurisdiction over those claims lies, instead, with the Illinois Commerce Commission. The

Seventh Circuit reasoned that if the Commerce Commission alone has jurisdiction to hear claims of this kind under Illinois law and such claims are not within the subject-matter jurisdiction of the Illinois state courts, it necessarily follows that a federal district court sitting in diversity cannot entertain them either. *Zahn*, 815 F.3d at 1087 (citing *Tacket v. General Motors Corp., Delco Remy Division*, 93 F.3d 332, 334 (7th Cir. 1996)).

¶ 9  In *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, this court addressed the lines of demarcation between the jurisdiction of the Illinois Commerce Commission and the jurisdiction of the courts with respect to claims against public utilities. Citing section 9-252 of the Public Utilities Act (220 ILCS 5/9-252 (West 2014)), which pertains to complaints "concerning any rate or other charge of any public utility," and in accordance with precedent from our appellate court, we held there that if a claim is deemed to be one for "reparations" rather than for civil damages, jurisdiction lies with the Commerce Commission, not the courts. A reparations claim is one where the essence of the grievance is that a public utility has charged too much for a service. A civil damages claim, by contrast, is one where the gist of the complaint is that a public utility has done something else to wrong the plaintiff. *Sheffler*, 2011 IL 110166, ¶¶ 41-42.

¶ 10  In the case before us, the Seventh Circuit has characterized Zahn's claims as being in the nature of "reparations" as that term is used in *Sheffler*. There is an important difference, however, between this case and *Sheffler*. *Sheffler* involved a claim against a conventional public utility. The claim asserted here is against an ARES. Under section 3-105(b)(9) of the Public Utilities Act (220 ILCS 5/3-105(b)(9) (West 2014)), ARESs are expressly excluded from the definition of public utility. Pursuant to section 16-102 of the Rate Relief Law (220 ILCS 5/16-102 (West 2014)), ARESs do not qualify as "electric utilities" either. They are merely "nonutilities licensed to sell retail electricity." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 328 Ill. App. 3d 937, 939 (2002).

¶ 11  Because NAPG is an ARES and ARESs are not utilities, the Seventh Circuit recognized that *Sheffler* does not resolve the question of whether claims against NAPG by customers seeking reparations for overbilling may only be brought before the Commerce Commission. Finding no other decision by this court directly on point, the Seventh Circuit looked to the legislature's stated and implied intent, the Rate Relief Law's consumer protection provisions and remedial measures, an unpublished order by our appellate court, an interim order by the Commerce Commission in an unrelated case, and a published decision by the appellate court involving a reparations claim against a telecommunications carrier in an attempt to estimate how we would decide the question if it came before us. The Seventh Circuit ultimately concluded that these sources failed to yield a definitive answer. It has therefore reached out to us directly here, through the mechanism of a certified question, for instruction.

¶ 12                                   ANALYSIS

¶ 13  As set forth above, the viability of Zahn's state law claims against NAPG in her federal diversity action turns on whether an Illinois state court would have had subject-matter jurisdiction to hear them or whether, under Illinois law, she would have been limited to pursuing those claims in an administrative proceeding before the Commerce Commission. The general principles governing this inquiry were recently discussed by our court in *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870. As we noted there, subject-matter jurisdiction

refers to a tribunal's power to hear and determine cases of the general class to which the proceeding in question belongs. *Id.* ¶ 23. The Illinois Constitution vests the circuit courts with original jurisdiction of all "justiciable matters" except when our court possesses "original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office." Ill. Const. 1970, art. VI, § 9. Accordingly, so long as a matter brought before a circuit court is justiciable and does not fall within the original and exclusive jurisdiction of our court, a circuit court has subject-matter jurisdiction to consider it. *McCormick v. Robertson*, 2015 IL 118230, ¶ 20.

¶ 14    In this case, there is no issue as to justiciability, and the matter is not one that falls within this court's original and exclusive jurisdiction. The only reason there is any doubt as to whether an Illinois circuit court would have jurisdiction to consider plaintiff's claims is that there is a line of Illinois authority holding that our General Assembly may vest original jurisdiction in an administrative agency rather than the courts when it enacts a comprehensive statutory scheme that creates rights and duties that have no counterpart in common law or equity. *J&J Ventures Gaming, LLC*, 2016 IL 119870, ¶ 23.[2] Even if one puts aside the question of whether the claims asserted by Zahn in this case can properly be said to involve rights or duties unknown in common law or equity, we do not believe that exception is applicable.

¶ 15    If the legislature intends for exclusive original jurisdiction to lie with the agency rather than with the circuit courts when it has enacted such a comprehensive statutory scheme, it must make that intention explicit. *Id.* ¶¶ 23-24. It has not done so here. While section 9-252 of the Public Utilities Act (220 ILCS 5/9-252 (West 2014)) does give the Commerce Commission exclusive original jurisdiction over claims that a *public utility* has charged "an excessive or unjustly discriminatory amount for its product, commodity or service," ARESs are not public utilities. In defining public utilities, the Act expressly excludes them. See 220 ILCS 5/3-105(a)(9) (West 2014). The claims asserted by plaintiff in this case therefore do not fall within the Commerce Commission's exclusive jurisdiction under section 9-252 of the Act. To hold otherwise would require us to interpret the statute in a way that is directly contrary to its express terms. That, of course, is something we may not do. No rule of construction authorizes us to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28.

¶ 16    NAPG argues that section 9-252 alone is not dispositive and that, in assessing the legislature's intentions regarding the Commerce Commission's jurisdiction, we should consider the overall statutory framework. There is support for this approach in *J&J Ventures Gaming, LLC*, 2016 IL 119870, where we recently held that legislative intent to divest circuit courts of jurisdiction and to place exclusive original jurisdiction in an administrative agency may be discerned by considering the statute as a whole, with the relevant provisions construed together and not in isolation and with an eye toward the reason for the law, the problems sought to be remedied, and the purposes to be achieved. *Id.* ¶¶ 24-25. Application of that approach,

_____
[2]Although our precedent refers to the "jurisdiction" of administrative agencies, that is something of a misnomer. The term "jurisdiction" is not strictly applicable when referring to an administrative agency. We use it as shorthand for describing the agency's authority to act. *J&J Ventures Gaming, LLC*, 2016 IL 119870, ¶ 23 n.6.

however, does not support NAPG's assertion that the legislature intended for the Commerce Commission to have exclusive jurisdiction over claims such as plaintiff asserted against ARESs.

¶ 17    The Rate Relief Law, which created ARESs, is a component of the Public Utilities Act (220 ILCS 5/1-101 *et seq.* (West 2014)), and it is the Public Utilities Act that provides the foundational statutory scheme at play in this case. The Public Utilities Act was enacted to assure the provision of efficient and adequate utility service to the public at a reasonable cost. *Local 777 v. Illinois Commerce Comm'n*, 45 Ill. 2d 527, 535 (1970). The Commerce Commission was created under the Act as the body responsible for maintaining "a balance between the rates charged by utilities and the services performed." *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 40.

¶ 18    The rate-making process is a complicated one. See, *e.g.*, *Ameren Illinois Co. v. Illinois Commerce Comm'n*, 2012 IL App (4th) 100962, ¶¶ 8-13 (describing how the Commerce Commission establishes the rates a public utility may charge its customers). The legislature's decision to place responsibility for that process on the Commerce Commission is a reflection of that complexity. In creating the Commerce Commission, the legislature understood that insuring that a public utility's rates are just and reasonable and that its services are adequate would require consideration of complex technological and scientific data and expert opinion, and it determined that such matters are best addressed by a tribunal that is itself capable of passing upon complex data. See *Sheffler*, 2011 IL 110166, ¶ 40.

¶ 19    When the legislature established the regulatory structure for public utilities under the Public Utilities Act and then conferred on the Commerce Commission responsibility for determining whether rates charged by those utilities are just and reasonable, it also vested exclusive jurisdiction in the Commerce Commission to consider complaints that a utility has charged an amount for its product, commodity, or service that is excessive or unjust. *Id.* ¶ 41; 220 ILCS 5/9-252 (West 2014). This is entirely logical. If technical expertise is needed to determine whether a utility rate is just and reasonable, it follows that the same technical expertise may be necessary to ascertain whether the rate subsequently charged by the utility is unjust or excessive. The two go hand in hand.

¶ 20    Such considerations are not present, however, when it comes to ARESs. ARESs were not part of the traditional regulatory system established to govern public utilities. They were introduced under the Rate Relief Law as part of an effort to partially deregulate Illinois's electricity market (*Zahn*, 815 F.3d at 1084-85).   As we have already pointed out, ARESs are expressly excluded from the definition of "public utility" under the Public Utilities Act (220 ILCS 5/3-105(b)(9) (West 2014)) and are not "electric utilities" under section 16-102 of the Rate Relief Law (220 ILCS 5/16-102 (West 2014)). They are simply "nonutilities licensed to sell retail electricity" (*Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 328 Ill. App. 3d 937, 939 (2002)). As such—and there is no dispute on this point—the prices they are permitted to charge are not established by the Commerce Commission through the conventional rate-making process and do not have to be submitted to the Commerce Commission for approval under the "just and reasonable" standard. In contrast to public utilities, an ARES's prices are a matter of contract between the ARES and its customers. The technical and regulatory expertise of the Commerce Commission does not come into play. Accordingly, the justification for giving the Commerce Commission exclusive original

- 6 -

jurisdiction over the disputes involving rates charged by public utilities is absent where, as here, the complaint concerns overcharging by an ARES.

¶ 21    NAPG correctly points out that ARESs are subject to numerous statutory requirements that are under authority of the Commerce Commission. For example, there are provisions obligating ARESs to obtain certificates of service authority from the Commerce Commission before serving residential customers (220 ILCS 5/16-115(a) (West 2014)); that forbid ARESs from discriminating against customers based on race, gender, or income (220 ILCS 5/16-115A(d) (West 2014)); that require them to obtain authorization in prescribed form before switching customers from another supplier (220 ILCS 5/16-115A(b) (West 2014)); and that impose standards regarding their marketing and billing practices (220 ILCS 5/16-115A(e) (West 2014)). Under section 16-115B(a) of the Rate Relief Law (220 ILCS 5/16-115B(a) (West 2014)), complaints alleging violation or nonconformance with these or other provisions of the law applicable to ARESs may be entertained by the Commerce Commission. If the Commerce Commission determines that an ARES is in violation or nonconformance, it may order the ARES to cease and desist; impose financial penalties; or alter, modify, revoke, or suspend the ARES's certificate of service authority. 220 ILCS 5/16-115B(b) (West 2014).

¶ 22    Zahn, the State, and the Commerce Commission differ somewhat in their assessment of the significance of these additional provisions. In the State's view, they should be read as permitting claims such as those asserted by Zahn to be heard and disposed of by the Commerce Commission if an aggrieved residential consumer elects to pursue them in that forum. The Commerce Commission itself suggests that, at the most, its jurisdiction extends only to claims that an ARES's rates or services are impermissible because they contravene the particular factors set forth in section 16-115A(d) of the Rate Relief Law (220 ILCS 5/16-115A(d) (West 2014)), a situation not present here. As for Zahn, she asserts that notwithstanding whatever other authority the Commerce Commission may possess, the absence of a provision expressly authorizing it to order reparations to consumers precludes a construction of the law that would confer exclusive jurisdiction over such claims on the Commerce Commission.

¶ 23    We express no view on the relative merits of these respective positions, for it is unnecessary for us to do so. Whatever the precise scope of the Commerce Commission's authority to consider claims asserted by residential consumers against ARESs, it is clear that nothing in the additional sections of the Public Utilities Act, including the provisions of the Rate Relief Law cited by NAPG, can fairly be read as expressing an explicit intention by the legislature that the Commerce Commission has *exclusive* original jurisdiction over those claims. Where the General Assembly has intended to confer exclusive jurisdiction on the Commerce Commission regarding a particular issue, it has said so specifically. See, *e.g.*, 220 ILCS 5/16-125(h) (West 2014) ("[r]emedies provided for under this Section [governing transmission and distribution reliability] may be sought exclusively through the Illinois Commerce Commission as provided under Section 10-109 of [the Public Utilities] Act"). NAPG can cite no similar language with respect to claims of overcharging asserted by residential consumers against ARESs. Consideration of the statute as a whole, as well as the reason for the law, the problems sought to be remedied, and the purposes to be achieved, therefore reaffirms the conclusion we reached at the outset of this opinion based on our examination of section 9-252 of the Public Utilities Act: the claims of the type asserted by plaintiff in this case do not fall within the Commerce Commission's exclusive jurisdiction.

That being so, an Illinois circuit court would have subject-matter jurisdiction to entertain them.

¶ 24                                               CONCLUSION

¶ 25        For the foregoing reasons, we answer the certified question "Does the Illinois Commerce Commission have exclusive jurisdiction over a reparation claim, as defined in *Sheffler v. Commonwealth Edison Company*, 2011 IL 110166, brought by a residential consumer against an alternative retail electric supplier, as defined by section 220 ILCS 5/16–102?" in the negative.

¶ 26        Certified question answered.