MCI TELECOMMUNICATIONS CORPORATION, Petitioner-Appellant, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (4th Division) No. 86—2006

Opinion filed April 14, 1988.

Anne E. Johnston and Ronald W. Gavillet, both of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, and Kathleen Nolan, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Thomas R. Phillips and Susan D. Proctor, both of Chicago, for respondent AT&T Communications of Illinois, Inc.

JUSTICE McMORROW delivered the opinion of the court:

AT&T Communications of Illinois, Inc. (AT&T), applied to the Illinois Commerce Commission (the Commission) to reclassify AT&T's long distance telephone service as "competitive [throughout the State of Illinois] [because the] service, or its functional equivalent, or a substitute service, is reasonably available from more than one provider *** [in the entire State]" in accordance with section 13—502(b) of the Universal Telephone Service Protection Law of 1985 (the Act) (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—502(b)). Following a hearing in which MCI Telecommunications Corp. (MCI) participated, the Commission entered an order allowing AT&T's application. MCI filed a petition for appellate review of the Commission's order.

Upon review, MCI argues that the Commission's order should be reversed because (1) the Commission erroneously interpreted the Act to permit reclassification of a service as competitive where an equivalent or substitute to AT&T's long distance service is reasonably available from other carriers to a majority, rather than all, access line customers in the State; and (2) the substantial evidence of record does not support the Commission's determination that an equivalent or substitute to AT&T's long distance service is reasonably available from other carriers to a majority of access line customers throughout the State.

We affirm.

BACKGROUND

On January 7, 1986, AT&T filed its application and supporting documents with the Commission for reclassification of its long distance service as competitive in the entire State of Illinois and approval of its proposed competitive tariff for that service. In support of its application, AT&T stated that long distance customers in Illinois had functionally equivalent or substitute service that is "reasonably available" from other carriers in accordance with section 13—502(b) of the Act (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—502(b)). AT&T proposed to continue to provide long distance service in accordance with its uniform, statewide pricing schedule so that long distance service customers would receive equal economic and technological benefits of competition. AT&T contended that its proposed tariff would reduce an average customer's current monthly bill by over 6% and requested that such reductions become effective on February 6, 1986.

In response to AT&T's application, other long distance telecommu-

nications carriers, including MCI, filed requests for a hearing and petitions to intervene. On February 5, 1986, the Commission entered an interim order in which it found AT&T's proposed service tariff to be competitive for purposes of that order and authorized AT&T to file its proposed tariff to be effective February 6, 1986, on an interim basis. Thereafter the Commission allowed the petitions to intervene, held a hearing on AT&T's application, and took the matter under advisement. The following summarizes the evidence produced at the hearing.

Evidence presented by AT&T showed that as of December 1985, long distance service was available from more than one provider through local access to, at a minimum, approximately 70% of the 5.7 million access lines in Illinois; by June 1986, this percentage would increase to over 75% of the access lines in the State; and by December 1986, the percentage would be at least 86%. In addition, four long distance companies provided customers with access to their service on a statewide originating basis by means of 800 numbers, thus making service from more than one provider available throughout Illinois. Also, certain large local telecommunications companies had either undertaken or substantially completed the process of converting to equal access, so that competitors to AT&T would be able to provide long distance service of similar quality and ease to that of AT&T without the burdens associated with non-equal access. AT&T's evidence further showed that the long distance toll market was competitive throughout the State because choices in the market were potentially available due to easy market entry. In view of this ease in market entry, many consumers in Illinois currently had actual and potential substitutes available from other common carriers who provided long distance services, as well as wide-area telecommunications services and private lines.

Evidence presented by the intervenors disputed that produced by AT&T. The intervenors' witnesses testified to the effect that the long distance service of AT&T was not competitive on a statewide basis, because there were several towns, villages, and nonurban areas where, because of nonequal access, competitors were hampered by technological burdens not encountered by AT&T (e.g., dialing of several extra digits in order to access the competitor's long distance service or a variability of transmission quality with inferior connections). Witnesses also testified to the effect that the long distance markets in these areas were not characterized by ease of entry, because capital was not readily available to AT&T's competitors.

Staff witnesses of the Commission testified that the public would benefit from the allowance of AT&T's application, provided AT&T retains its statewide rate averaging for basic long distance service and

maintains charges for other long-distance-related services at rates no greater than those applicable in the Federal jurisdiction. Staff observed that AT&T's competitors would continue to enjoy several competitive advantages over AT&T even if AT&T's application were granted, since these competitors were not forced to average their rates, had fewer regulatory restrictions than AT&T, had the ability to pursue competitive status for all services (not just long distance service), and were not rate-base regulated.

The Commission determined that AT&T's application should be allowed, finding that "a majority of access line customers presently have the ability to obtain long distance service from more than one provider." The Commission also determined that AT&T's long distance service "should be provided under a statewide pricing schedule *** [to] ensure that all of AT&T's Long Distance Service customers will receive equal economic and technological benefits of competition." The Commission further determined that the rates for optional long distance services provided by AT&T should not be "greater than the corresponding published rate in the federal jurisdiction." MCI thereafter petitioned for review of the Commission's order.

OPINION

We first turn our attention to the Commission's interpretation of the Act. MCI argues that the Commission's construction of section 13—502(b) of the Act is contrary to the plain meaning of the term "reasonably available" alternative services in that section. According to MCI, alternatives to AT&T's long distance service can be "reasonably available" only when those alternatives are actually available to all customers in the State. MCI asserts that alternatives cannot be "reasonably available" when they are actually available to only a majority of the access line customers of this State. We disagree.

When considering the interpretation to be given a statute, a court's primary objective is to ascertain and give effect to the intent of the legislature (*Penkava v. Kasbohm* (1987), 117 Ill. 2d 149, 154) according to the plain and ordinary meaning of the statutory language (*Donnelly v. Edgar* (1987), 117 Ill. 2d 59, 66). Terms must be considered in their overall context with a view to the reason and necessity for the statute and the purpose to be achieved thereby. (*People v. Inghram* (1987), 118 Ill. 2d 140, 149.) The interpretation of a statute by an agency charged with its administration is accorded great deference, but is not binding on the court. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53.)

Section 13—502 of the Act, at issue here, is part of a comprehen-

sive legislative enactment known as the Universal Telephone Service Protection Law of 1985 (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—101 *et seq.*). In adopting this legislation, the Illinois legislature specifically found, *inter alia*, that "universally available and widely affordable telecommunications services are essential to the health, welfare and prosperity of all Illinois citizens; [and that] the competitive offering of telecommunications services may create the potential for increased innovation and efficiency in the provision of telecommunications services and reduced prices for consumers." Ill. Rev. Stat. 1987, ch. 111²/₃, pars. 13—102(a), (c).

In accordance with these findings, the legislature declared as State policy that "telecommunications services should be available to all Illinois citizens at just, reasonable and affordable rates and *** such services should be provided as widely and economically as possible in sufficient variety, quality, quantity and reliability to satisfy the public interest." (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—103(a).) It also declared that "when consistent with the protection of consumers of telecommunications services and the furtherance of other public interest goals, competition should be permitted to function as a substitute for certain aspects of regulation in determining the variety, quality and price of telecommunications services and *** the economic burdens of regulation should be reduced to the extent possible consistent with the protection of the public interest." (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—103(b).) Lastly, the legislature declared as a matter of State policy that "the consumers of [regulated] telecommunications services and facilities *** should be required to pay only reasonable and non-discriminatory rates or charges and *** in no case should rates or charges for non-competitive telecommunications services include any portion of the cost of providing competitive telecommunications services." Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—103(d).

In order to put into effect these legislative findings and policy declarations, section 13—502(b) states in pertinent part, "A service shall be classified as competitive only if, and only to the extent that, for some identifiable class or group of customers in an exchange, group of exchanges, or some other clearly defined geographical area, such service, or its functional equivalent, or a substitute service, is reasonably available from more than one provider, whether or not any such provider is a telecommunications carrier subject to regulation under this Act. *** The Commission shall have the power to investigate the classification of a telecommunications service, on its own motion or upon complaint, and to modify such classification or reclassify any service, in whole or in part, after notice and hearing." (Ill. Rev. Stat. 1987, ch.

111²/₃, par. 13—502(b).) Similarly, section 13—209 defines a "competitive telecommunications service" as "a telecommunications service, its functional equivalent or a substitute service, which, for some identifiable class or group of customers in an exchange, group of exchanges, or some other clearly defined geographical area, is reasonably available from more than one provider ***. A telecommunications service may be competitive for the entire state, some geographical area therein, *** or for a specific customer or class or group of customers, but only to the extent consistent with this definition." Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—209.

■■ Considered in the context of its legislative findings and policy declarations, section 13—502 of the Act was correctly interpreted by the Commission to authorize reclassification of AT&T's statewide long distance service as competitive, on the ground that alternatives to AT&T's long distance service are actually available to a majority of access line customers in this State. Section 13—502(b) calls for "reasonable availability" of alternatives to AT&T's long distance service. Because of the legislature's specification that such availability be "reasonable," we cannot agree with MCI's position that the Act requires total, complete, absolute equality in the quality, quantity, or degree of availability of those alternatives in comparison to AT&T's long distance service.

MCI's construction of section 13—502(b) would render impossible achievement of the Act's goals that "telecommunications services *** be available to all Illinois citizens at just, reasonable and affordable rates *** as widely and economically as possible in sufficient quality, quantity and reliability to satisfy the public interest" and that "the economic burdens of regulation *** be reduced to the extent possible consistent with the protection of the public interest." (Ill. Rev. Stat. 1987, ch. 111²/₃, pars. 13—103(a), (b).) MCI's suggested interpretation of section 13—502 would also render illusory the Act's objectives that telecommunications services be "universally available[,] *** widely affordable" and increasingly innovative, efficient, and economical by virtue of a "competitive offering of telecommunications services." Ill. Rev. Stat. 1987, ch. 111²/₃, pars. 13—102(a), (c).

■■ MCI also asserts that section 13—502 limits a competitive reclassification "only to the extent" that alternatives are "reasonably available," and that as a result AT&T's reclassification of long distance service should have been restricted to those areas where alternatives are currently "reasonably available" to all long distance customers of this State. We disagree. In limiting the telecommunications service of a particular carrier to competitive reclassification "only to the extent"

that there are reasonable alternatives to the service in a certain geographical area, exchange, or similar grouping, the legislature sought to ensure that "in no case should rates or charges for non-competitive telecommunications services include any portion of the cost of providing competitive telecommunications services." (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—103(d); see also Ill. Rev. Stat. 1987, ch. 111²/₃, par. 13—507.) We find no support in the Act for MCI's assertion that section 13—502, by restricting competitive reclassification "only to the extent" that alternatives are "reasonably available" in a certain geographical area, exchange, or group or class of customers, requires that literally every customer in this State have the choice of a carrier, other than AT&T, that provides near-identical long distance service to that of AT&T.

■ In addition, our review of the record finds substantial support for the Commission's order. (See Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—201(e)(iv)(A); see also, *e.g.*, *Allen v. Weinberger* (7th Cir. 1977), 552 F.2d 781, 784.) Evidence produced at the hearing established that, as of December 1985, long distance service was available from more than one provider through local access to approximately 70% of the access lines in Illinois and that this percentage would increase steadily in subsequent months. In addition, the record showed that equal access to local exchanges had been undertaken or substantially completed in numerous areas of this State and had already greatly reduced the barriers MCI contends would render its long distance service noncompetitive to that of AT&T. Also, use of 800 numbers provides the functional equivalent of an alternative service by which certain telecommunications carriers offer long distance service to access line customers throughout the State. The Commission determined that these circumstances warranted the conclusion that alternatives to AT&T's long distance service are reasonably available to a majority of access line customers in Illinois. In view of the substantial evidence we find in the record to support these factual determinations, we decline MCI's invitation to substitute our judgment for that of the Commission.

For the reasons stated, the order of the Illinois Commerce Commission is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.