# Illinois Official Reports

## Appellate Court

---

*People ex rel. Madigan v. Illinois Commerce Comm'n*,
2015 IL App (1st) 140275

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, and CITIZENS UTILITY BOARD, Petitioners, v. ILLINOIS COMMERCE COMMISSION; COMMONWEALTH EDISON COMPANY; ILLINOIS INDUSTRIAL ENERGY CONSUMERS; EXXON-MOBIL POWER AND GAS SERVICES, INC.; STERLING STEEL COMPANY; and CITY OF CHICAGO, Respondents. |
| District & No. | First District, Third Division<br>Docket Nos. 1-14-0275, 1-14-0403 cons. |
| Filed | July 29, 2015 |
| Decision Under Review | Petition for review of order of Illinois Commerce Commission, No. 13-0533. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carolyn Shapiro, Solicitor General, and Timothy Maggio, Assistant Attorney General, of counsel), for petitioner People *ex rel*. Madigan.<br><br>Julie Lucas-Soderna, of Citizens Utility Board, of Chicago, for petitioner Citizens Utility Board.<br><br>John Kelliher and Thomas Stanton, both of Illinois Commerce Commission, of Chicago, for respondent Illinois Commerce Commission. |

Rooney Rippie & Ratnaswamy LLP (E. Glenn Rippie, of counsel) and Jenner & Block LLP (Barry Levenstam, of counsel), both of Chicago, and Jenner & Block LLP (Matthew Price, of counsel), of Washington, DC, for respondent Commonwealth Edison Company.

Panel

JUSTICE MASON delivered the judgment of the court with opinion.[1] Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1    In these consolidated appeals, petitioners, People of the the State of Illinois *ex rel.* Lisa Madigan, Attorney General (People), and the Citizens Utility Board (CUB) (collectively petitioners), appeal from an order of the Illinois Commerce Commission (Commission) determining that respondent, Commonwealth Edison (ComEd), was entitled to calculate interest on the full amount of under collected revenues pursuant to the annual reconciliation provisions of the Energy Infrastructure Modernization Act (220 ILCS 5/16-108.5(d)(1) (West 2012)) (Act). Petitioners contend that the Commission erred in not requiring that the interest calculation be net of Accumulated Deferred Income Taxes (ADIT) attributable to the under-collected revenues. Finding no error in the Commission's order, we affirm.

¶ 2                                    BACKGROUND
¶ 3                    A. Energy Infrastructure Modernization Act
¶ 4    In *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 130302, we recently addressed the history and purpose of the Act:

"In 2011, the legislature enacted the Energy Infrastructure Modernization Act, which is section 16-108.5 of the Public Utilities Act (220 ILCS 5/16-108.5 (West 2012)), to stimulate new investments by utilities in the State's energy infrastructure. The Act provides for guaranteed payment of utilities' costs and a rate of return for its investments in infrastructure. 'A public utility is entitled both to recover in its rates certain operating costs and to earn a return on its rate base (*i.e.*, the amount of its invested capital).' [Citation.]

In exchange for this legislative guarantee of payment, the utility must commit to making very substantial investments in updating and improving its facilities, and in hiring new employees. 220 ILCS 5/16-108.5(b) (West 2012). A public utility's participation in the Act is voluntary. 220 ILCS 5/16-108.5(b) (West 2012). ComEd is a participating utility and committed to invest an estimated $2.6 billion in infrastructure on top of its normal annual capital investment program over the next ten years. 220 ILCS 5/16-108.5(b)(2) (West 2012). Under the Act the formula to

_____

[1]This matter was recently assigned to Justice Mason.

establish rates enables ComEd to make planned substantial investment increases in its capital commitment by providing it with greater certainty of timely cost recovery than it would have received under previous [ratemaking procedures]." *Id.* ¶¶ 4-5.

¶ 5      The "performance-based" formula rate is designed to operate in a standardized manner and is "updated annually with transparent information that reflects the utility's actual costs to be recovered during the applicable rate year." 220 ILCS 5/16-108.5(c) (West 2012). The Act generally requires that the formula rate approved by the Commission "[p]rovide for the recovery of the utility's actual costs of delivery services that are prudently incurred and reasonable in amount consistent with Commission practice and law." 220 ILCS 5/16-108.5(c)(1) (West 2012). In order to place the issue raised here in context, we describe the ratemaking process envisioned by the Act.

¶ 6      Public utilities like ComEd are subject to both federal and state regulation. The Commission sets rates for power distributed in Illinois, while the Federal Energy Regulatory Commission (FERC) regulates interstate transmission of energy. See 220 ILCS 5/16-101A(d) (West 2012); 16 U.S.C. § 824(a), (b)(1) (2012). Under federal law, ComEd is required to file annually a FERC Form 1, which sets out comprehensive financial and operating data for the previous year. *Commonwealth Edison*, 2014 IL App (1st) 130302, ¶ 15. Under the Act, the Commission sets rates for any given rate year on a preliminary basis using cost data for the prior year reflected in ComEd's most recently filed FERC Form 1, plus projected plant additions and updated depreciation and expense corresponding to those expected additions, resulting in ComEd's anticipated reasonable and prudent costs of service during the upcoming rate year. 220 ILCS 5/16-108.5(c) (West 2012). Following the calendar year for which rates were projected and once actual figures for that rate year are known, the Act contemplates that ComEd will compare its anticipated and actual revenue requirement and calculate the difference, which, if the projection underestimated actual costs of service, ComEd will recover from ratepayers or, if the projection exceeded actual costs of service, ComEd will refund to its customers. 220 ILCS 5/16-108.5(d)(1) (West 2012). We refer to the difference–positive or negative–as the reconciliation balance.

¶ 7      Thus, for example, ComEd's 2014 projected rate requirement was based, in part, on cost data from its 2013 FERC Form 1. In 2015, once ComEd's actual costs of service for 2014 were known, ComEd calculated the reconciliation balance and will either collect or refund that amount in 2016. This process repeats each year.

¶ 8      The Act recites the purpose of the reconciliation:

"Notwithstanding anything that may be to the contrary, the intent of the reconciliation is to ultimately reconcile the revenue requirement reflected in rates for each calendar year *** with what the revenue requirement would have been had the actual cost information for the applicable calendar year been available at the filing date." *Id.*

¶ 9      At the time of the rate proceedings at issue here, section 16-108.5(d)(1) provided:

"Any over-collection or under-collection indicated by such reconciliation shall be reflected as a credit against, or recovered as an additional charge to, respectively, with interest, the charges for the applicable rate year." *Id.*

This provision was amended in 2013 to specify that interest should be "calculated at a rate equal to the utility's weighted average cost of capital approved by the Commission for the

prior rate year." 220 ILCS 5/16-108.5(d)(1) (West Supp. 2013). We discuss below the circumstances and significance of this amendment.

¶ 10    The issue here focuses on whether interest should be calculated on the entire reconciliation balance or whether ADIT should be deducted from the balance prior to the calculation of interest. ADIT reflects the temporary timing difference between when an expense (or revenue) item is recognized on the company's books versus when the company recognizes that expense (or revenue) on its tax return. As we observed in *Ameren Illinois Co. v. Illinois Commerce Comm'n*, 2013 IL App (4th) 121008, ¶ 34, ADIT "quantifies the income taxes that are deferred when the tax law provides for deductions with respect to an item in a year other than the year that the item is treated as an expense for financial reporting purposes." (Internal quotation marks omitted.) As applied here, the timing difference means that although ComEd can recognize or "book" the reconciliation balance (and the associated ADIT liability) in 2015 because, due to the Act's provisions, it is probable that ComEd will realize that revenue in 2016, ComEd's obligation to pay income tax on that revenue is postponed until it is actually received in 2016.

¶ 11    Finally, the Act imposes limits on ComEd's calculated return on equity. To the extent that collecting or refunding the reconciliation balance produces a higher or lower rate of return than the limits specified in the Act, the rate of return is adjusted to keep the prior rate year's actual return within statutory limits. 220 ILCS 5/16-108.5(c)(5) (West 2012). These limits are commonly referred to as the Return on Equity (ROE) Collar.

¶ 12                                    B. Procedural History

¶ 13    Following the 2013 amendments to the Act, on May 13, 2013, ComEd filed proposed tariff pages and revised revenue requirements to implement the amendments. On June 5, 2013, the Commission approved ComEd's revised revenue requirements after finding that the proposed tariff changes complied with the amendments.

¶ 14    On September 4, 2013, the People filed a complaint with the Commission alleging that certain changes approved by the Commission produced excessive, unjust, unreasonable and unlawful rates in violation of the Act. Ultimately, the Commission initiated its own investigation into the matter and identified three issues to be addressed: whether ComEd's May 30 tariff filing correctly calculated (1) interest on the reconciliation balance by "grossing up" the weighted average cost of capital to account for the income tax effect of the portion of interest attributable to equity financing (2) the ROE Collar and (3) interest on the full reconciliation balance as opposed to the reconciliation balance net of ADIT. The order initiating the investigation designated ComEd as the respondent. In addition to the People and CUB, the City of Chicago and the Illinois Industrial Energy Consumers appeared or intervened as parties.

¶ 15    After discovery and exchange of information, the Commission conducted an evidentiary hearing on October 24, 2013. Written testimony of various experts and exhibits were admitted into evidence. We further discuss below the substance of the expert testimony. Following the hearing, the parties submitted briefs.

¶ 16    As relevant to the issue on appeal, petitioners argued that ComEd realized a cash benefit from its deferred obligation to pay income tax on the reconciliation balance and that allowing ComEd to calculate interest on the full reconciliation balance, without deducting ADIT, allowed the recovery of excessive rates. ComEd challenged this assertion contending that to

- 4 -

the extent in any given rate year, the revenues it received were less than its actual revenue requirement, it incurred a carrying cost for the entire shortfall and that netting ADIT from the interest calculation on the reconciliation balance would under compensate ComEd for this expense.

¶ 17    On November 13, 2013, the administrative law judge (ALJ) issued a proposed order for the Commission's review. After considering exceptions to the ALJ's proposed findings, the Commission entered its order on November 26, 2013.

¶ 18    As it relates to this appeal, the Commission found that the interest provision in subsection (d)(1) of the Act was ambiguous given that it did not specify one way or the other whether interest should be calculated on the entire reconciliation balance or on the net balance after deduction of ADIT. Resorting to principles of statutory construction, the Commission concluded that ComEd was entitled to calculate interest on the full reconciliation balance utilizing a rate equal to ComEd's weighted average cost of capital for the prior year. The Commission first reasoned that because the legislature had specified in one section of the Act that certain calculations be made on a "net" basis and had also referred in another provision to a calculation "adjusted for taxes," an interpretation that required ADIT to be deducted from the reconciliation balance prior to the calculation of interest under subsection (d)(1) would read into the Act "exceptions, limitations, or conditions the legislature did not express." The Commission also noted that issues regarding subsection (d)(1)'s clarity, including the method of computing interest on reconciliation balances, had been raised in a prior proceeding. Although the legislature later amended the subsection to legislatively overrule the result reached by the Commission on another issue, it did not change or clarify the method of computing interest on the reconciliation balance. Given that the legislature had an opportunity to clarify the issue, the Commission viewed its failure to do so as supporting the interpretation the Commission adopted here. The Commission concluded its findings on this issue with the observation that if, "[i]n the future, *** further arguments from the parties are presented or clarity from the legislature is provided on this topic, the Commission will revisit the issue."

¶ 19    The Commission further ruled against ComEd on the first issue of whether the weighted average cost of capital rate used to calculate interest on the reconciliation balance was appropriately "grossed up" for the income tax effect of that portion of the rate attributable to equity financing. The Commission found, as it did in connection with the ADIT issue, that the legislature had specified a rate of return in the Act and that ComEd's position would impose conditions on that calculation not expressed in the Act. Finally, the Commission rejected petitioners' proposal that an average rate base, as opposed to a year-end rate base, be used for purposes of calculating the ROE Collar.

¶ 20    The People, CUB and ComEd each sought rehearing before the Commission. Those applications were denied on January 15, 2014. The People, CUB and ComEd then timely initiated this action for administrative review pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994) and section 10-201 of the Public Utilities Act (220 ILCS 5/10-201 (West 2012)). The parties' respective appeals were consolidated. On June 9, 2014, ComEd voluntarily dismissed its appeal (No. 1-14-0114), leaving the appeals filed by the People (No. 1-14-0275) and CUB (No. 1-14-0403), both of which concern only the third issue addressed by the Commission.

¶ 21                                                        ANALYSIS

¶ 22          The scope of review of a Commission order is set out in section 10-201 of the Public Utilities Act. *Id.* Under this provision, Commission orders are deemed *prima facie* reasonable and the burden is on the party appealing the order to overcome that presumption. 220 ILCS 5/10-201(d) (West 2012); *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2011 IL App (1st) 101776, ¶ 6 (quoting *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 398 Ill. App. 3d 510, 514 (2009)). Commission orders are subject to reversal when the Commission's findings are not supported by substantial evidence. 220 ILCS 5/10-201(e)(iv)(A) (West 2012). Notwithstanding the statute's reference to "substantial evidence," our supreme court has held that the Commission's factual findings must be upheld unless they are contrary to the manifest weight of the evidence. *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill. 2d 348, 367 (1992); see also *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 122860, ¶ 58 (applying manifest weight standard). Findings of fact are deemed contrary to the manifest weight of the evidence only when an opposite conclusion is clearly evident from the record. *Continental Mobile Telephone Co. v. Illinois Commerce Comm'n*, 269 Ill. App. 3d 161, 171 (1994). As the parties challenging the Commission's order, petitioners must affirmatively demonstrate that the conclusion opposite to that adopted by the Commission is clearly evident. *Id.*

¶ 23          We accord deference to decisions of the Commission in light of its expertise and experience in the complex field of utility regulation. *Archer-Daniels-Midland Co. v. Illinois Commerce Comm'n*, 184 Ill. 2d 391, 397 (1998); *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 398 Ill. App. 3d 510, 514 (2009). Where the Commission's decision involves construction of a statute, the extent of that deference depends on whether the statute is ambiguous.

¶ 24          When the Commission construes an unambiguous statute, the agency's interpretation is not binding on the court (*People ex rel. Madigan*, 2011 IL App (1st) 101776, ¶ 6) and the court need not defer to the agency's interpretation. But although agency interpretations of ambiguous statutory provisions are likewise not binding, we give "substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute." (Internal quotation marks omitted.) *Id.* This is particularly true when the interpretation draws on the agency's expertise and experience and we will not substitute our own construction of an ambiguous statute for a reasonable interpretation adopted by the agency charged with its administration. *Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 776, 781 (2007) ("if reasonable readers of a statute could differ over the extent of the regulatory authority it confers, we defer to the agency's interpretation if the interpretation is defensible").

¶ 25          As in any other case involving the construction of a statute, our review is *de novo*. *Ameren*, 2013 IL App (4th) 121008, ¶ 18. We will not reverse a Commission interpretation of law unless it is erroneous. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 282 Ill. App. 3d 672, 676 (1996).

¶ 26          Although ComEd argues that subsection (d)(1) is not ambiguous, we conclude the Commission correctly determined that the provision was open to more than one reasonable interpretation and was thus ambiguous. As the Commission noted, this provision fails to address the method of computing interest on the reconciliation balance and so it is only by

resort to interpretative aids other than the language of the provision itself that the intent of the legislature can be discerned.

¶ 27 Normally, the language of a statute is the best indicator of its meaning. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010) (citing *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009)). But when statutory language is ambiguous and susceptible to more than one interpretation, both of which are reasonable, it is appropriate to resort to other aids of construction to determine legislative intent. *Id.* (citing *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009)).

¶ 28 The Commission further found, and we agree, that there is support for both interpretations advocated by the parties.[2] Experts for petitioners opined that allowing interest to be calculated on the full reconciliation balance fails to take into account the cash benefit realized by ComEd as a result of its delayed obligation to pay income tax on the revenue shortfall. Because, during the current rate year, ComEd records revenue expected to be received in the following year, it likewise records a deferred income tax expense related to that revenue. According to petitioners' experts, the net impact is that ComEd records higher earnings due to the reconciliation revenue, but delays payment of the income tax associated with those higher earnings until the revenue is actually received from customers, a result they assert provides a cash benefit to the utility. Consequently, they reason that the out-of-pocket cost to ComEd as a result of the reconciliation balance is the after-tax amount of the balance and that interest should be calculated only on that amount.

¶ 29 Petitioners' experts further observed that netting ADIT from interest calculations was consistent with generally accepted accounting principles (GAAP) and standard regulatory practice that matches ADIT to the associated assets included in rate base, thus recognizing the cash benefit to the utility of the accounting treatment.

¶ 30 ComEd counters that petitioners' experts failed to take into account the carrying costs incurred by the utility on the revenue shortfall, which ComEd must finance for two years prior to its recovery. Thus, although ComEd is able to defer payment of income tax associated with the reconciliation balance, it must finance the entire shortfall, including the deferred tax amount, and a formula rate that computes interest only on the balance net of ADIT would not allow ComEd to recover the full cost associated with the reconciliation balance.

¶ 31 ComEd's expert, Christine Brinkman, further articulated why ADIT in the context of rate base and ADIT in the context of a reconciliation balance are different. ADIT is deducted from rate base (comprised of investor funds on which the utility is allowed to earn a return) to recognize the cash benefit realized from the excess of tax over book depreciation. Brinkman explained that assets may, for book purposes, depreciate over 30 years, but for income tax purposes, those same assets depreciate over 5 years. Given the larger depreciation deduction for tax purposes, ComEd's taxes payable are reduced in the current rate year, resulting in cash available (from ratepayers) to fund rate base investments. In contrast, the reconciliation balance provides no cash to ComEd until it is collected. Thus, in this context, ADIT provides no benefit to the utility in the current rate year and the entirety of the shortfall must be financed by ComEd through investor supplied funds until it is collected.

---

[2]Indeed, before the Commission, CUB took the position that because subsection (d)(1) did not specifically address the issue, the proper interpretation was up to the Commission.

¶ 32    A simple hypothetical illustrates the difference in outcomes. If we assume an under-collection of revenues of $100,000, a 10% interest rate and an effective tax rate of 40%, the two approaches produce the following results:

| Calculation of Interest before ADIT | | Calculation of Interest after ADIT | |
|---|---|---|---|
| Undercollection: | $100,000 | Undercollection: | $100,000 |
| Plus Interest at 10%: | +10,000 | Less ADIT: | - 40,000 |
| Less ADIT on balance: | - 44,000 | Plus Interest at 10%: | + 6,000 |
| | | Tax on Balance ($106,000): | 42,000 |
| Net of tax recovery: | $ 66,000 | Net of tax recovery: | $ 64,000 |

Hypothesizing an overrecovery of revenues in the same amount, requiring a refund of the reconciliation balance plus interest to ratepayers, produces the same result, *i.e.*, calculating interest without netting ADIT results in a greater net of tax recovery to ComEd's customers.

¶ 33    As noted, the Commission did not expressly address the question from an accounting standpoint or determine, as a factual matter, whether ComEd realized a cash benefit from ADIT on the reconciliation balance. Rather, the Commission determined legislative intent regarding the alternative approaches by examining other provisions of the Act as well as legislative action following a previous rate proceeding, which involved the application of subsection (d)(1). Both of these approaches are acceptable aids to statutory construction in the case of an ambiguous statute. See *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56 (" '[w]hen the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended' " (quoting *People v. Hudson*, 228 Ill. 2d 181, 193 (2008))); *People v. Marshall*, 242 Ill. 2d 285, 292-93 (2011) (court will not view language of ambiguous statute in isolation, but will consider other relevant provisions of the statute (citing *People v. Beachem*, 229 Ill. 2d 237, 243 (2008))); *In re Marriage of O'Neill*, 138 Ill. 2d 487, 496 (1990) (" '[w]here the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent' " (quoting *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983))); *Stevens v. Lou's Lemon Tree, Ltd.*, 187 Ill. App. 3d 458, 464 (1989) ("Amendments to a statute *** are assumed to be enacted with the legislature's knowledge of judicial construction of the law."). We cannot say that the Commission's approach was unreasonable or that the resulting interpretation was erroneous.

¶ 34    The Commission first identified other provisions of the Act in which the legislature specifically directed adjustments to an amount or a balance. Specifically, section 16-108.5(c) of the Act (220 ILCS 5/16-108.5(c) (West 2012)) directs that amounts related to projected plant additions are included in rate base on a net basis considering "updated depreciation reserve and expense." Also, the Act's formula for the ROE Collar calculation in section 16-108.5(c)(5) expressly requires that the calculation be "adjusted for taxes." 220 ILCS 5/16-108.5(c)(5) (West 2012). The Commission reasoned that because in other provisions of the Act, the legislature imposed "exceptions, limitations or conditions" on required calculations, its failure to likewise condition or otherwise limit the calculation of interest on

the reconciliation balance meant that the entire balance should bear interest, not the "net" balance or the balance "adjusted for" ADIT.

¶ 35 Although petitioners fault the Commission's reasoning on this point, we find it persuasive. The legislature easily could have defined the manner in which "interest" should be calculated on the "balance," but unlike other provisions of the Act, chose not to. We view this as a reliable indicator that no further limitations were intended. See *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 186 (1999) (had legislature intended to restrict application of statute of repose in product liability cases to latent injuries, "it would have inserted that limitation").

¶ 36 The Commission also found it significant that the legislature failed to amend the language regarding the interest calculation following the Commission's decision in a prior proceeding before the Commission to consider the Act's interest provision. In ICC Docket No. 11-0721, the first proceeding following the Act's effective date, the Commission addressed issues regarding the rate to be used in calculating interest on the reconciliation balance under subsection (d)(1). *Commonwealth Edison Co.*, Ill. Com. Comm'n No. 11-0721, at 33-36 (Order on Rehearing Oct. 3, 2012). Specifically, ComEd contended that the rate should be equal to its weighted average cost of capital. Commission staff advocated utilizing a rate equal to an AAA-rated bond for two years (the period of time during which the balance–positive or negative–is carried by ComEd). The Commission ultimately adopted a hybrid approach that calculated the rate taking into account ComEd's cost of capital, the nature of the obligation and the applicable borrowing period, resulting in a lower rate than ComEd's weighted average cost of capital.

¶ 37 In the course of the prior proceedings, although it did not resolve the issue, the Commission also addressed the People's contention–identical to the argument advanced here–that interest should be calculated on the reconciliation balance after the deduction of ADIT to assure that consumers receive the benefit of income tax deferrals. ComEd contended that the deferred income tax liability provided no source of cash to offset the revenue shortfall. The Commission "declined to adopt" the People's position, stating:

> "ComEd contends that this recommendation does not provide ComEd with cash. [The People] provide little information establishing that this procedure is within generally accepted accounting procedures, or that it would be of benefit to ComEd or to ratepayers." *Commonwealth Edison Co.*, Ill. Com. Comm'n No. 11-0721, at 167 (Final Order May 29, 2012).

¶ 38 As noted above, following the Commission's decision, the legislature amended subsection (d)(1) to overrule the Commission's determination as to the appropriate rate of interest, specifically directing that the rate to be used in calculating interest on the reconciliation balance is the utility's weighted average cost of capital. At the same time, although the legislature was undoubtedly aware of the People's contention that the same subsection should be interpreted to require the deduction of ADIT prior to the calculation of interest, the legislature neither adopted that position via amendment nor did it otherwise clarify subsection (d)(1).

¶ 39 Petitioners discount the significance of the legislature's failure to further define the "balance" on which interest is calculated. They argue that since the Commission did not actually decide the issue in the prior proceedings, but rather declined to address it for lack of evidence, the legislature's inaction should not be interpreted as approving ComEd's position.

While we agree that the Commission's act in declining to adopt the People's position for lack of evidence is not the functional equivalent of a decision on the merits, the salient point is that when it amended subsection (d)(1), the legislature would have been aware of the dispute. Since it was amending this very subsection, it would have been logical, therefore, to clarify the issue if, in fact, the legislature agreed that interest should be calculated on the "net" reconciliation balance or the balance "adjusted for taxes." Consequently, we believe the Commission's properly found the legislature's failure to act to be indicative of the legislature's view that the "balance, with interest" means the whole balance and not some derivative thereof.

¶ 40    Petitioners contend that the Commission acknowledged that petitioners' position on this issue had "merit" in that it was consistent with GAAP and standard regulatory practice, but declined to adopt it because the Commission believed it lacked authority to do so. We disagree, as does the Commission, with this explanation for the Commission's ruling.

¶ 41    First, the Commission points out, it has not been "standard regulatory practice" to deduct ADIT from reconciliation balances for purposes of calculating interest. While longstanding practice has been to deduct ADIT from *rate base*, there is no similar history with respect to reconciliation balances given the Act's recent vintage. And we find persuasive Brinkman's explanation of the difference that context makes in assessing whether ADIT results in a cash benefit to the utility given that, in the reconciliation balance context, both the revenue and the corresponding tax liability will be received and paid, respectively, in the future. Thus, petitioner's emphasis on the Commission's reference to standard regulatory practice is misplaced.

¶ 42    For the same reason, *Ameren*, 2013 IL App (4th) 121008, is inapposite. *Ameren* dealt with the "standard regulatory practice" of deducting ADIT from rate base, a concept with which ComEd does not disagree. Because, as explained above, ADIT resulting from the difference between book and tax depreciation provides a source of cash to the utility, *Ameren* determined that failing to net ADIT from rate base would "allow [the utility] what amounts to an interest-free loan at ratepayers' expense." *Id.* ¶ 39. Here, in contrast, ComEd presented credible arguments that ADIT associated with a reconciliation balance provides no cash benefit to a utility given that the revenues associated with the deferred tax liability will not be realized until future rate years. Thus, unlike ADIT in the context of rate base, ADIT associated with a reconciliation balance does not reduce the utility's current tax liability nor does it afford the utility a source of funds at its customers' expense.

¶ 43    Further, while GAAP dictates the methodology for recording revenue and expense items for accounting purposes, it does not purport to predict whether the accounting treatment results in a "cash benefit" to the business, which was the focus of the parties' arguments before the Commission. For this reason, the Commission's comment that the "concept" of netting ADIT against the reconciliation balance is consistent with GAAP is not the same as a finding that ADIT *must* be deducted under the language of the statute or that the failure to deduct ADIT prior to calculating interest on the balance is inconsistent with GAAP.

¶ 44    Petitioners contend that the tentative nature of the Commission's ruling evidenced by its stated willingness to revisit the issue should circumstances warrant indicates that the Commission is intimidated by recent legislative overrides of its rulings and has thus abdicated its statutory directive to establish rates, "which it shall find to be just and reasonable." 220 ILCS 5/9-201(c) (West 2012). We disagree. We view the Commission's

statement in this regard as an acknowledgement that this is the first definitive resolution of this issue. As noted, although the People raised this issue in a prior proceeding, the Commission did not address the issue on its merits, instead declining to adopt the People's position for lack of supporting evidence. The Commission has now considered additional evidence and arguments advanced by all parties and has reaffirmed its prior decision not to adopt the People's proposal. We view the Commission's further statement of its willingness to consider this issue in future proceedings as nothing more than a recognition that the legislature may opt to consider further amendments to the Act.

¶ 45    As the Commission notes, its observation that there "may be merit" to petitioners' proposal is not an indication that ComEd's position lacks merit or that the Commission believes petitioners' interpretation of subsection (d)(1) is the correct one. Indeed, for the reasons we have articulated above, the Commission found, we believe correctly, that the interpretation advocated by ComEd was consistent with legislative intent. Once legislative intent is determined, the Commission is not free to make findings inconsistent with that intent, even if the Commission might have ruled otherwise had the matter been committed to its discretion. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 283 Ill. App. 3d 188, 207 (1996) ("It is impermissible for the Commission to substitute its reasonableness standard for the legislature's absolute standard."). Certainly petitioners have not sustained their burden to identify anything in the language of subsection (d)(1) or its legislative history that compels a finding that ADIT *must* be deducted from a reconciliation balance prior to the calculation of interest. Thus, we cannot say that the conclusion opposite to the one reached by the Commission is "clearly evident." *Continental Mobile Telephone Co.*, 269 Ill. App. 3d at 171.

¶ 46    Finally, contrary to petitioners' contention, nothing in the record before the Commission leads us to conclude that the adoption of ComEd's position results in the recovery of unjust or unreasonable rates. Fundamentally, this argument overlooks the fact that the benefit flowing from the higher interest calculation inures to the utility in some years and ratepayers in others. Specifically, in years where ComEd recovers revenues in excess of its actual revenue needs and must refund the excess to its customers, the method of calculating interest on the reconciliation balance adopted by the Commission results in a higher refund to ratepayers. Under these circumstances, it cannot be said that the interest rate calculation approved by the Commission produces rates that unjust and unreasonable.

¶ 47                                                   CONCLUSION

¶ 48    The Commission had the power to interpret the provisions of the Act relating to the calculation of interest on the reconciliation balance, which it exercised in accordance with well-established principles of statutory construction. Nothing in the Act or its legislative history compels the finding that the only possible interpretation of the interest provision is that advocated by petitioners and we therefore we affirm the Commission's order.

¶ 49         Affirmed.